**LOCAL 675 OF the UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICE PLUMBERS & PIPE FITTERS OF the UNITED STATES AND CANADA, AFL–CIO, Plaintiff-Appellee,**

v.

**HONEYWELL, INC., Defendant-Appellant.**

**No. 79–4379.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 28, 1981.

Decided Aug. 14, 1981.

Marvin O. Granath, Minneapolis, Minn., argued for defendant-appellant; Seyfarth, Shaw, Fairweather & Geraldson, Los Angeles, Cal., on brief.

Benjamin C. Sigal, Honolulu, Hawaii, for plaintiff-appellee.

Before KILKENNY, SNEED, and FARRIS, Circuit Judges.

SNEED, Circuit Judge:

This case requires the construction of terms in a multi-employer collective bargaining agreement between the Pneumatic Control Systems Council (PCSC) and the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada (UA). We shall refer to this agreement as the "national agreement." The defendant, Honeywell, is a member of PCSC and the plaintiff, Local 675, is a local union of UA. The issue is whether the dispute between the parties in this case must be arbitrated in accordance with the arbitration procedures of the national agreement, as Honeywell contends. Local 675 contends, and the district court held, that arbitration pursuant to a "local agreement" between it and the Plumbing and Mechanical Contractors Association of Hawaii was proper. We disagree. We reach the same result as the Fifth Circuit did recently in *United Association Local 725 v. Honeywell, Inc.*, 607 F.2d 659 (5th Cir. 1979). There the court concluded that arbitration must occur according to the procedures of the national agreement. Accordingly, we vacate the district court's order enforcing the arbitration award made pursuant to the local agreement.

## I.

### THE FACTS AND PROCEDURAL SETTING

The national agreement, to which Honeywell is a party, sets forth the relationship between the parties. But some important terms are not determined on an industry-wide basis. For example, wage rates and other economic benefits are determined locally and incorporated into the national agreement. One purpose of the local agreement, to which Honeywell is not directly a

party, is to determine the wage rates in Hawaii for work covered by the national agreement. Local agreements also cover other matters, some of which are incorporated into the national agreement. This leads to a complex system of interlocking and overlapping provisions. Some aspects of the relationship between the national and local agreements are clear, however. For example, Honeywell, as a party to the national agreement, has bound itself to employ UA members to do the type of work described in the national agreement. In Hawaii, it must hire members of Local 675 to do that work and pay the wage rates fixed by the local agreement.

Both the national and local agreements provide for arbitration. Section 49 of the national agreement states that if a disagreement exists as to the interpretation of a local agreement, the local grievance procedure should be used.[1] Section 51 of the national agreement states:

"Where a disagreement exists between the Employer and a local union concerning whether or not a given provision of the local agreement should apply, or regarding the intent, meaning, application, or compliance with the terms of this Agreement, it shall be resolved in accordance with the grievance procedure covered in this Article."

Honeywell's position is that the national grievance procedure must be used because it claims that the applicability of the national agreement is at issue.

The dispute arose in the following manner. On March 30, 1977, the UA sent a telegram to the PCSC, stating that Local 675 claimed that Honeywell was employing non-union workers in its Hawaiian air conditioning shops. The PCSC sent a reply to the UA the next day, stating that Honeywell denied using non-union workers to perform work covered by the national agree-

1. Section 49 states:
   Where a disagreement exists between the Employer and a local union concerning the meaning, interpretation, or operation of the applicable terms of the local agreement, it shall be resolved in accordance with the grievance procedure covered in the local agreement.

ment. Local 675 subsequently filed a grievance under the local agreement seeking the discharge of five Honeywell employees. After Honeywell failed to appear at a local arbitration hearing on June 20, 1977, the local committee continued the hearing to June 27. Since Honeywell made clear in the interim that it would not participate in any arbitration proceedings under the local agreement, the committee heard the grievance *ex parte.* The committee, which consisted of three union appointees and three management appointees, concluded unanimously that the five employees were doing work covered by the national agreement and that Honeywell was bound by the local agreement to fill those jobs through the union hiring hall. Therefore it directed Honeywell to discharge the five employees.

When Honeywell refused to comply with the committee's order, Local 675 sought to enforce the arbitration award pursuant to section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. A hearing was held in the district court on November 21, 1978. At the hearing, with some difficulty, the district court extracted from Honeywell's counsel its objection to Local 675's grievance. Honeywell's argument is that the five employees the local arbitration committee ordered discharged do not per-

form work covered by section 13 of the national agreement, which is set forth in the margin.[2] Of particular importance is the last sentence of section 13, which states that "oiling, greasing and cleaning of equipment when incidental to or part of the repair and replacement" of equipment are work tasks covered by the agreement. Honeywell states that the five employees oil, grease, and clean machinery and replace filters. But, it contends, they do not do so incidental to repair or replacement of equipment. Therefore, Honeywell argues, they are not covered by the national agreement and need not be union members. Upon hearing this argument, the district court decided that the dispute boiled down to the question of what the five employees actually do. He ordered counsel for both sides to draft a stipulation of facts. Counsel for Honeywell and Local 675 both told the court that they doubted that they could reach agreement on any matter.

After the parties failed to reach agreement, the district court considered cross-motions for summary judgment. Relying on the *Steelworkers* trilogy,[3] it granted Local 675's motion. It stated:

[T]his Court cannot say "with positive assurance that the arbitration clause [in the Local Agreement] is not susceptible

**2.** Section 13 states:

(1) This Agreement covers the rates of pay, hours, and working conditions of all journeymen and apprentices employed by the Employer doing plumbing and pipe fitting as related to the installation, service, and maintenance of all pneumatic control or other piping systems, and component parts thereof, including fabrication, assembling, erection, installation, dismantling, repairing, reconditioning, adjusting, altering, and servicing of said pneumatic control or other piping systems, and the handling, unloading, distributing, reloading, tying on, and hoisting of all piping materials, appurtenances, and equipment used in connection with said pneumatic control or other piping systems by any method, including all hangers and supports of every description, and all other work included in the trade jurisdictional claims of the United Association.

(2) The following mechanical equipment service and maintenance work tasks are included in this Agreement: repair and replace-

ment of oil burners, boilers, boiler water feeders, low water cut offs, traps, strainers, valves, pumps, heating coils, interchangers, and converters of steam or hot water heating systems; the repair and replacement of cooling coils, compressors, condensers, evaporators, interchangers, and cooling towers of refrigeration systems including the replacement of parts, evacuation, and recharging of refrigeration equipment, and other repairs required to make unit and/or equipment operational, belt adjustment, oiling, greasing and cleaning of equipment when incidental to or part of the repair or replacement.

**3.** *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960).

of an interpretation that covers the asserted dispute. Doubts [if any] should be resolved in favor of coverage." *United Steel Workers of America v. Warrior and Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–1353, 4 L.Ed.2d 1409 (1960). Any question of interpretation of the clause was therefore one for arbitration. *United Steel Workers of America v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960).

Therefore, it enforced the local committee's order.

## II.

### ANALYSIS

We conclude, as did the Fifth Circuit, that the *Steelworkers* trilogy for this purpose is not controlling. The issue is not whether the grievance is arbitrable. Both parties agree that it is. The issue is "which arbitration machinery the parties agreed to use." *United Association Local 725 v. Honeywell, Inc., supra,* 607 F.2d at 661.

We hold that this dispute falls squarely within section 51 of the national agreement, quoted *supra.* Honeywell and Local 675 disagree as to the meaning of section 13 of the national agreement. According to section 51 of the national agreement, disagreements about the applicability of the national agreement must be resolved in accordance with the grievance procedure established by the national agreement. Therefore Local 675 must bring its grievance to arbitration under the national agreement. *Id.* at 662.[4]

Like the Fifth Circuit, we are concerned about whether an employer may sidestep local arbitration merely by stating that it disagrees with the union concerning the meaning of some provision of the national agreement. *Id.* at 661. Honeywell asserts it has that power. It insists that it need do nothing more than state that a disagreement exists concerning the application of the national agreement to nullify section 49 and invoke section 51. We reject that interpretation. Honeywell is required to state what the disagreement is and show that it is not wholly insubstantial. Honeywell's counsel reluctantly explained its position to the district court. It should have explained its argument earlier and more freely. We conclude, however, that Honeywell does suggest a plausible interpretation of section 13. Mindful of the proper teaching of the *Steelworkers* trilogy, we will not usurp the function of the arbitrator and attempt to decide the merits of Local 675's grievance. *See* R. Gorman, *Labor Law* 552 (1976).

Because we find that a not wholly insubstantial disagreement exists concerning the interpretation of section 13 of the national agreement, we conclude that, under section 51 of that agreement, the dispute must be resolved according to the procedures in the national agreement. Therefore we vacate the district court's order enforcing the local committee's decision.

ORDER OF ENFORCEMENT VACATED.

---

**4.** Local 675 argues that Honeywell should have obtained a ruling from the national arbitrators. Honeywell apparently initiated a grievance against Local 675 under the national agreement to force Local 675 to drop its grievance before the local committee, but never prosecuted it.

We reject Local 675's argument that Honeywell somehow waived its right to object to the local committee's order because it failed to prosecute its grievance. If Local 675 has a grievance it is its duty, not Honeywell's, to bring it before the proper arbitration body.