709 F.2d 1328
 113 L.R.R.M. (BNA) 3591, 98 Lab.Cas. P 10,288
 J.D. STEEL COMPANY, INC., Plaintiff-Appellant,
v.
INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL AND
ORNAMENTAL IRON WORKERS, AFL-CIO, Defendant-Appellee.
INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL AND
ORNAMENTAL IRON WORKERS, AFL-CIO, Plaintiff-Appellee,
v.
J.D. STEEL COMPANY, INC., Defendant-Appellant.
 No. 82-5839.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 13, 1983.
Decided July 7, 1983.
 
 Philip M. Prince, Snell & Wilmer, Phoenix, Ariz., for plaintiff-appellant.
 Blythe Mickelson, Van Bourg, Allen, Weinberg & Roger, San Francisco, Cal., for defendant-appellee.
 Appeal from the United States District Court for the District of Arizona.
 Before KENNEDY and BOOCHEVER, Circuit Judges, and EAST,* District Judge.
 KENNEDY, Circuit Judge:
 
 
 1
 This is a suit to determine which of two grievance procedures shall be used to resolve a labor dispute regarding union work between J.D. Steel Co., the appellant here, and the International Association of Bridge, Structural and Ornamental Iron Workers. J.D. Steel and the International are parties to a national collective bargaining agreement, and J.D. Steel argues that the labor dispute is governed by the grievance procedure in the national agreement. The International contends, and the district court held, however, that a local agreement between Local 75 of the International union and an Arizona employers' group contains the controlling arbitration procedure. We reverse.
 
 
 2
 The national agreement establishes the bargaining relation between J.D. Steel and the union. Through the General Working Rules, which are incorporated in the contract, it sets the nationally applicable terms and conditions of employer-union relations. A variety of terms are not covered by the national agreement, however, but are determined locally and incorporated in the national agreement by reference.[1] The local conditions of employment in the case before us are set by the Arizona Master Labor Agreement, a contract between Local 75 of the International and a local employers' group. Though J.D. Steel is not a party to the Arizona Master Agreement, it conceded in argument before us that it is bound by the local agreement's terms establishing local conditions of employment.
 
 
 3
 The national and local agreements both contain dispute resolution procedures. Paragraph 9 of the national agreement provides:
 
 
 4
 In case a dispute arises which involves a question of the scale of wages or the General Working Rules of the Association, the matter shall be referred to the General President of the International Association of Bridge, Structural and Ornamental Iron Workers and he or his representative shall meet with a representative of the Employer who shall take steps at once to ascertain the facts and render a decision thereon.
 
 
 5
 Where the dispute involves a scale of wages any decision rendered shall be retroactive to the date on which the dispute orginated [sic].
 
 
 6
 In case the representative of the Employer and the representative of the Association are unable to reach an agreement on the facts in the case they may select an agency mutually agreeable to them to hear and pass upon the case in dispute.
 
 
 7
 J.D. Steel contends this dispute concerns interpretation of the General Working Rules, and should be resolved according to the national grievance procedure. We agree.
 
 
 8
 Where a dispute is concededly arbitrable and the only question is which of two grievance procedures governs, the legal issue properly may be resolved by the court. See Local 675 of the United Association of Journeymen and Apprentice Plumbers & Pipe Fitters v. Honeywell, Inc., 652 F.2d 1361, 1364 (9th Cir.1981). That is the case here.
 
 
 9
 The core of the labor dispute in the case before us is whether the company is required to employ union labor when erecting structures for its own use. The company does not contend it is not bound by the local conditions of employment set forth in the Arizona Master Agreement if this is union work. Rather, it contends that under the General Working Rules of the national agreement, the work in question is not union work at all.
 
 
 10
 Section 1 of the General Working Rules sets forth in great detail the union's jurisdiction over particular classes of work. To the extent provisions of the local master agreement also specify categories of union work, they are superseded by the General Working Rules.[2] Section 1 of the General Working Rules thus controls the dispute. Because disagreement regarding interpretation of the General Working Rules is a matter within the grievance mechanism set forth in the national agreement, we hold that the national grievance mechanism is the controlling procedure.
 
 
 11
 The union claims the local grievance procedure nevertheless is relevant on the theory that if the work in question is union work, the provisions of the local agreement concerning wages, conditions of employment, pension contributions, and the like, are implicated. The point is, however, that the central dispute is whether the work is covered at all, and each of the union's derivative claims depends upon resolution of this threshold and controlling issue.
 
 
 12
 A party may not avoid a grievance procedure which covers the central and primary issue in a dispute by resort to a grievance procedure in a second contract which bears upon the essential controversy in only a derivative or collateral way. The contract documents in the case before us require this interpretation. Our decision is also consistent with the contract interpretation we reached in Local 675 of the United Association of Journeymen and Apprentice Plumbers & Pipe Fitters v. Honeywell, Inc., 652 F.2d 1361 (9th Cir.1981), and with the Fifth Circuit's holding in United Association Local 725 v. Honeywell, Inc., 607 F.2d 659 (5th Cir.1979). In those cases, as here, the national agreement controlled the central issue in the case, and it was invoked on a substantial basis, not simply as a subterfuge to avoid the duty to arbitrate in the forum initially chosen by the grieving party.
 
 
 13
 Our holding fits the design of the contracts between the parties. Here the national agreement, by the General Working Rules, specifically provides that it supersedes any inconsistent local conditions of employment. The local grievance procedure, in turn, excludes job classifications, wage rates, and craft jurisdiction,[3] a recognition that certain matters are committed to other contracts and other grievance procedures.
 
 
 14
 It was error for the district court to order arbitration under the local contract when the company insisted on the priority of the grievance mechanism in the national agreement. The order of the district court is reversed, and the case remanded for further appropriate proceedings.
 
 
 15
 REVERSED and REMANDED.
 
 EAST, Senior U.S. District Judge, dissenting:
 
 16
 I respectfully dissent. In my view, the local agreement provides the best working vehicle to arbitrate the whole of the dispute.
 
 
 
 *
 Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation
 
 
 [1]
 Paragraph 6 of the national agreement provides:
 The Employer agrees to abide by the General Working Rules of this Association and to pay the scale of wages, work the schedule of hours and conform to the conditions of employment in force and effect in the locality in which the Employer is performing or is to perform work, provided that such conditions are not in violation of the National Labor Relations Act.
 
 
 [2]
 Section 30 of the General Working Rules of the national agreement provides:
 These working rules shall become effective immediately upon their adoption and supersede all other existing working rules in every locality over which this International Association has jurisdiction.
 
 
 [3]
 The grievance and arbitration provisions of the local agreement provide in relevant part:
 (a) When a dispute or a problem regarding the application or interpretation of this Agreement arises, with the exception of job classifications and wage rates and craft jurisdiction, it shall be handled according to the following procedure:
 The relevant procedure then follows.